Good morning. We have three cases for argument on the docket this morning. The first one is Case No. 21-1575, Cheryl Borowski v. Kean University. Is that how it's pronounced? Yes, Your Honor. All right. Mr. Haperty? Yes, Your Honor. May it please the Court, my name is Kevin Haperty and I represent the appellant Cheryl Borowski in this appeal. I'd like to reserve three minutes for rebuttal. Great. To my time. Thank you, Your Honor. It was an abuse of discretion for the district court to abstain from the exercise of jurisdiction over appellant's civil rights case for at least one very basic reason. There was no ongoing or pending enforcement proceeding, criminal, quasi-criminal, or civil, at the time the appellant filed her action in federal court in April of 2020. Whether Kean University's, quote, investigation, end quote, which led to a finding of a violation of the New Jersey policy prohibiting discrimination in the workplace could be characterized as an enforcement proceeding, that action was terminated when the Civil Service Commission determined that it lacked jurisdiction to hear appellant's appeal from Kean's finding of a policy violation. As an initial proposition, Kean's investigation cannot fairly be considered an enforcement proceeding because, one, it consisted of nothing more than an internal investigation without witness testimony or other development of a record, and more importantly, two, took place after Kean had terminated appellant based upon nothing more than supposed complaints from students and well before it had even conducted an investigation, let alone made a determination. Could I ask about that? Sorry? I mean, we have other precedents, Gonzales, Altice, others, that in the context of sanctioning an employee and the like, that those can count as enforcement proceedings. Why does it matter that it happened after rather than before? Because it's really, there's nothing to enforce, per se, because they've already made a determination and they actually enforced it. So the proceeding that took place afterwards is not an enforcement proceeding because enforcement had already occurred. It was basically, I guess it was as a pretext for why they took the action that they did. So just out of curiosity, how exactly, I'm reading the record and I'm a little curious about how exactly this happened because I think your client was named as a respondent. Yes. And so that means that she typically, respondent means that you didn't initiate the action. Right. So it strikes me that the state did do something. They, I guess, started this enforcement proceeding or you don't call it an enforcement proceeding, an investigation. Right. And then that goes to some degree of administrative body for which she's named as the respondent. It's one thing to say, hey, I was the petitioner, but she's a respondent in this case. But it didn't go to an administrative body on the enforcement aspect of it. What happened was that there's a policy and they conducted an investigation which did not involve any witness testimony, but rather statements from various witnesses and nothing, there's no record that was made. And they simply made a determination and said, you violated the policy, period. And what was left to you at that point is to take an appeal of that determination to the Civil Service Commission. So there really wasn't a proceeding below, any type of enforcement proceeding below. So simply because she is the one taking the appeal, there was, it was the university initiating it internally. You're saying that it matters that being initiated in the university can't count as enforcement proceeding? Well. It's a state university. It's a state university. And she has union protection. She's not that well employed. She does not have union protection, Your Honor. She's an adjunct professor. Right. But she doesn't have, she's not that well employed to satisfy these termination requirements. She's a contract employee. Okay. But they're terminating her contract. Correct. But what they did was they terminated her contract. They took her out of the classroom before they even made a determination on the policy violation. Solely on the basis of some complaints that they got that were unsubstantiated at the time. Fine. But they didn't fire her until they substantiated those complaints. No. They did fire her. What they did was they removed her from the classroom and they did not renew her contract at the end of the semester. She'd been there for about five years. She'd been teaching the same class. So. But if these charges had not been substantiated, right, if they found these are completely unwarranted, her contract would have been renewed and she would have been coming back to teach again. We don't know that. But the point is that they did terminate her in the middle of the semester without any determination in advance. And the determination was made six months later that she had violated the policy. So it's hard to see where there's. Younger requires a pre-deprivation action rather than a post-deprivation. Where do you get that from? What in the case law supports your idea that it matters that this happened afterwards? Well, I'm not really, I'm not really focused so much on the idea that there wasn't an enforcement action. I mean, we can accept it that you could characterize this as an enforcement action. I don't think that's a fair characterization. But assume for the sake of the argument that it is an enforcement action. The issue is whether or not it was still pending at the time. OK, so let's talk about that. As I understand it, anyone who gets a final decision from a state administrative agency can appeal to the appellate division unless the person hasn't exhausted all the administrative appeals. That that's correct, isn't it? Reasonably, reasonably correct. Your Honor, it's the argument is that the case was still pending because Ms. Borowski failed to appeal from a final determination of the Civil Service Commission. There was no final determination. Right. But if she had known the Civil Service Commission couldn't hear her case from the start, she still could have appealed the termination decision straight to the appellate division. She could not have. Why not? Because the policy is the policy provides its own appeals process. It's laid out in the administrative regulations how you go through this. And what she did was she followed exactly what the administrative regulations provide for as far as an appeal is concerned. But in any event, she could then go next to the appellate division. You're just saying she couldn't go straight there. I don't know. There's no basis for which she could go to the appellate division. There was no final determination and there was no final administrative action that was done. So no record. But but couldn't she say there was no final determination because there was a jurisdictional finding? I'd like to now go to the appellate division and contest that jurisdictional finding. That's what she could do. She could do that. She absolutely could do that. That's all she could do, though. And so but then you've still got this problem, at least you may have this problem, this O'Neill case that, you know, the circuit decided in 1994. And O'Neill suggests that pending kind of means pending, ongoing and unexhausted. And you kind of recognized that there was still one more option that your client had, which was to appeal the denial of jurisdiction. And your client didn't do that. Your client came to federal court. And so if that's right, why isn't this just kind of resolved by O'Neill? Well, O'Neill, I think, is readily distinguishable for this reason, Your Honor, that in that particular case, they did not follow the prescribed appeal process under the revised ordinance, which provides specifically for the levels of appeal that you go through. In that case, after they got an unfavorable decision below in the initial process, they went immediately to federal court. In this particular case, Ms. Borowski followed the prescribed appeals process, which was to go to the Civil Service Commission. And two years later, after thousands of dollars were spent, three days of testimony and all kinds of proceedings down below, the Civil Service Commission denied the client jurisdiction, which left no record below for the appeals. So let me just repeat back what I think I heard you say. What I think I heard you say was this. O'Neill involved an instance where there was not an exhaustion of the state administrative process. But in this case, you believe that you have exhausted the state administrative process. To the extent you failed to exhaust it was to go to the state judicial remedies. And what you're saying is that this isn't O'Neill. O'Neill comes when you don't do that administrative process. You've done it and you say that you can't be barred by Younger, at least on the force of O'Neill, just because you didn't do your state court proceedings. In fact, you might say that that helps your Younger case because now the Combi interests have minimized. That's correct. It's the what would happen is because of the Civil Service Commission's denial of jurisdiction on it, what the appellate was left with was taking an appeal to the appellate division of the jurisdictional issue alone. And at that point, it's a very uncertain outcome. But wouldn't O'Neill's logic suggest you're supposed to take that to the appellate division? I would say that O'Neill's logic would say that if you had a decision on the merits, where does it say that in O'Neill? It doesn't say it in O'Neill, but it's implicit in O'Neill in the sense of there's an entire prescribed appeals process that you go to, you know, you get to the administrative agency, you get a decision there, you go to the Court of Common Pleas, you go to the Superior Court. I think there's some logic in saying you shouldn't have to go there. The problem is O'Neill's rationale seems to be that there's a broad exhaustion requirement. Now, I'm not sure that's compatible with Sprint. Yeah. Maybe O'Neill survives Sprint. Maybe it doesn't. But if O'Neill survives, O'Neill seems to say exhaust what you can in the state court. And you're admitting she could have at least challenged the jurisdictional holding in the appellate division. She could have, but that would have been an uncertain result. But but also let me just tease that out. At one level, whatever O'Neill says about the exhaustion process, exhaustion is kind of a way of looking at what the states give you. Right. And so states give you administrative process and you have to exhaust it. In this instance, at least New Jersey doesn't require that you go to its state appellate division. It does require that you use its administrative process. Right. And so once you use that process, it basically says, I believe it ends with you can now sue. And you can now something to that effect. And it allows. But it doesn't necessarily say where we look at other principles to tell us it's a New Jersey appellate division. And then we look at or possibly it could be federal court. Right. But but at least the extent that exhaustion depends on state law. State law just requires that you go through the administrative process and it doesn't tell you where to go judicially. You're right. But in this, this is kind of a legal limbo in this particular situation because there is an appeals process that's provided for in the regulations. She followed that process. And then when the civil service said we have no jurisdiction on it, there's no record for it for her to take to the appellate division. So she's got to go on the jurisdictional issue. And God only knows how that would turn out. Counselor, can I just clarify that? I understand that your argument is we don't need to enter that legal limbo if there is no civil enforcement proceeding under Sprint, as interpreted by Mahan at Title Max. That is exactly correct. We don't we don't enter into the O'Neill zone. No, I think it's clear there is no pending action. It was terminated when the Civil Service Commission declined jurisdiction. And. You know, as noted, the appeals court, the appellate division, like this court, is not a finder of fact. It reviews a record from below. So if we view O'Neill as a barrier, does O'Neill survive Sprint? I think it does or no, I don't think it does, Your Honor, in the sense that. Why not? What in Sprint undermines it? Because in Sprint they basically said that the only three areas where the exceptions are from the New Orleans public service case. And, you know, O'Neill doesn't fall into those exceptions. And I think my sense in reading the court's opinion in O'Neill was that there was a frustration with the appellants in that particular case, in the sense that they were going around a well-prescribed process to go directly to federal court when they could have pursued those types of remedies. It's not as clear cut in this particular case because of the procedural posture that we're in, given that the appellate division didn't. Thank you. We'll take it back up on rebuttal. Thank you, Your Honor. Ms. Rajba. Good morning, Your Honors. May it please the Court. Rima Rajba, Deputy Attorney General, on behalf of the appellees. The district court's decision below to abstain from exercising jurisdiction per younger is inconsistent with the Supreme Court and Third Circuit precedent and should be affirmed. And I'd like to start with O'Neill and the Middlesex factors, which is... Can you start with the Sprint factors? Because I think that that's going to be important. So why don't we just start with those? Yes, Your Honor. In terms of the Sprint factors, I think that the matter below here falls under, really falls squarely into the second type of proceeding, which is a civil enforcement proceeding. And I think as, as Your Honors... Quasi-criminal. It has to be a quasi-criminal civil enforcement proceeding initiated by the state in its sovereign capacity. Why is this proceeding in a state's sovereign capacity? Isn't the state acting like an employer? I mean, the state's not acting to... This isn't something like a fine or imprisonment or anything that involves kind of crim-pro concerns. This is an employer deciding that we would like to terminate someone. Walmart does that. Everyone does that. So what about this employment action? It involves the state. That's fine. But it doesn't involve the state as sovereign, does it? Well, in this case, Your Honor, the reason it's an enforcement proceeding is because an investigation was initiated by the state to enforce the state policy prohibiting discrimination. That's a state employment policy. An employer can initiate an investigation to determine compliance with the employer's handbook or the employer's employment policy. So my question is, why is this the state in its sovereign capacity as opposed to the state in its market participant employer sort of capacity? Well, because here the state is acting to enforce a state law and that the state... So if an employer acts to enforce a state law, does that somehow transform the employer's action into state action or a sovereign action? Well, when the proceeding, Your Honor, when the proceeding or when the action is commenced to sanction the plaintiff or potentially sanction the plaintiff. Well, let's just talk about sanction. Is termination of employment? I thought when a state uses it begins to sanction someone, we're talking punishment. We're talking fine. When I say punishment, I mean like criminal sort of punishment. Termination is not really kind of a sanction in the notion that like if an employer terminates someone, I don't know that you would say, oh, that constitutes punishment. You might say, OK, that constitutes something. But I don't know that that is punishment in the sense that we would traditionally understand the term. So the notion that just the state's doing this because they think something went wrong and they want to terminate someone. I mean, do we have do you have any cases saying that termination of employment is punishment? Well, there's the Gonzales case, Your Honor, in which similarly in that case, the plaintiff was an employee of the defendant and the plaintiff was subject to an internal investigation for allegedly making false statements. And so that employer, who was the Waterfront Commission, at the end of the investigation, then served Gonzales with charges. I agree with the contention that there was no action that was or could be taken as a result of the investigation because the termination had already happened. So you're saying because in Waterfront, that's what happens, right? There's an investigation to challenge that there was an administrative disciplinary hearing, if I remember it correctly. Here, the plaintiff has already been terminated, right? The contract hasn't been renewed. In other words, what's happening at the end of the investigation? Well, the contract was not correct because she was an adjunct and was subject to a contract. Her contract was not renewed. And when the investigation was completed, there was a finding that she violated the policy. And that in itself leads to the potential for sanctions in that if she did try to come back or the finding itself is within her record. And assuming or if she did try to go back to employment at that point. That's a far bit different from Gonzales, though, right? I mean, I think you have to agree that in Gonzales, you have an investigation that results in an action. Here you have action, investigation, and then the speculation that some things could happen. And I'm not going to challenge that because, of course, there are adverse consequences. But back to the proceeding again, how does this square with Title Max? Because I thought in Title Max we held that the mere pendency of an investigation wasn't a civil proceeding. And I want to get a better understanding of why this is different than Title Max. I apologize, Your Honor, but I don't I'm not too familiar with Title Max. Title Max involved a subpoena. So how is how is the employment context of someone being fired? Is that different or is that the same? I mean, the investigations further along, should we treat the the firing as a government sanction? It's not like there's some penalty being imposed here, is there? Well, and I and I think that the case law shows the penalty doesn't have to be it doesn't have to be some kind of monetary penalty or a fine. I think it started out with that the state was attempting to sanction her. And by, you know, starting this internal investigation and then ultimately, you know, a full investigation under the policy and then ultimately making a finding. So let's just say that let's just say that Keene just said, you know, we don't need adjuncts. We're switching away from adjuncts. We're going to go tenure track people. We aren't renewing your contract. That that would be the exact same outcome as we have here would just be for very, very, very different reasons. Contracts not renewed. And so it seems strange to me to say that this outcome that in some instances would be perfectly permissible, but in this instance, it's not only impermissible, but it's punishment. That's that strikes me as quite a lot of leaks. I mean, you reference Waterfront, but at least Waterfront involved the state law enforcement agency. I don't think Keene has that power. I think that, well, and I looked at Gonzales again, as well, it was it was the the employer was acting, the employer was the state, it was acting in its sovereign capacity as far as, you know, initiating actions, initiating a proceeding to. Sovereign capacity. It's there. You know, this is a Title seven suit. He's he's saying I was terminated. It's not like a law enforcement or a crime or any punishment beyond termination that's being imposed. So. You know, if Gonzales says that's it, quasi criminal enforcement of law, I mean, maybe that's wrong, but that's our circuit precedent. So what do we do with that? Well, and I think that is the precedent. It doesn't I mean, under Sprint, it doesn't have to be a criminal action. But a civil enforcement proceeding, which I think by these cases has been a variety of proceedings have been held to be civil enforcement proceedings. And there's also another case, as well as the PDX case in which it was found that the state, the Department of Labor, in that case, audited the plaintiffs and imposed thirty thousand dollars worth of fines. Right. And the court held. But there's no fines here. Correct, Your Honor. And I believe in PDX, the court held that the initiation of the audit itself was the beginning of a civil enforcement proceeding. Could we go to the other part of this? We've been talking about civil enforcement. I want to make sure we have time to talk about whether O'Neill applies and if it does, whether O'Neill is still good law. So the first part of that, you know, you heard Judge Phipps was having a discussion with your friend on the other side about this. O'Neill was a case in which there was jurisdiction and a merits determination by a state agency. Does that apply here where the sole there was a bunch of testimony taken, but the sole ruling below was the agency lacks jurisdiction. So is that a reason to distinguish O'Neill here? It's not, Your Honor. Well, because first, because the basic holding in O'Neill is that when there was an administrative determination, an adequate state court judicial review was available and the plaintiffs then chose not to pursue that judicial review, such as the appellate division, and instead went right to federal court, that they've at that point, they have seemed to have abandoned, you know, abandoned their state proceeding. But the only review that was available in terms of review, appellate review, was of subject matter jurisdiction. So actually, Your Honor, there was the final agency decision of the Civil Service Commission that said it lacked jurisdiction. But the finding, the final determination that Ms. Borowski violated the policy also remained. And if you look at the Civil Service decision, which said that it had no jurisdiction, it referenced, it said because she's not a civil service employee and it referenced a different statute, Title 18A, which governs state professors. So all that remained was the university's finding, not anything from the administrative proceeding. So under Title 18A, the university's finding that she violated the policy is actually directly appealable to the appellate division as well. So we should conceptualize the university's finding as the first stage of the administrative process, in which case every university ruling then has to be challenged in state court. You could never go straight to federal court under that logic. Well, I mean, I don't know that that would be where it would necessarily have to go, but. A strong reading of O'Neill takes you there, though, right? So I think that, right. We have to back off O'Neill to avoid this truly imponderable situation where basically no one can ever come to federal court who's a New Jersey university employee. I think O'Neill indicates that there has to be a coercive administrative proceeding first that is started. And I don't think that speaks to the universe of all the types of cases that could be appealed. But I think in a situation such as this, yeah, so O'Neill applies because the state did initiate a coercive administrative proceeding. But you are not taking the position that the university's own sanctioning itself counts as a coercive administrative proceeding.  I'm not sure what you're and I'm not sure what you mean, Your Honor, by your question. I guess the question, Judge Phipps and I have been getting at since it's a state university, does any time a university sanctions someone mean it has to go that the state has begun its coercive process? It's the it's the petitioner here. It's seeking to fire her. Therefore, the wheels of the machinery of justice has begun and it has to play its way out all the way in state administrative and then state court before we get to federal court. I think, again, depending on the type of proceeding, but because, you know, the state here came, you know, has the final authority to to deal with issues arising under Title 18A. And then if they make a final administrative determination, which they did here, a finding that she violated the policy, then that is appealable to the appellate. Are there any consequences for her that flow from this finding beyond termination? Is there like a a black mark in her record or something that's going to hinder her possibility of getting future state employment or anything like that? It it is possible, Your Honor, because a finding is part of her personnel file. And that is information that, yes, I mean, that is a matter of law. It's just it's just possible that people will find out the way they find out about any firing. Yes, I mean, the finding is there right now. You know, there is a finding that she violated this policy, indicating that, you know, she violated the policy prohibiting discrimination. Let me ask you about O'Neill's continuing validity. O'Neill was a 1994 case. I think Sprint is a 2013 case. If Sprint undercuts the foundations of O'Neill, then it no longer binds us. And my question is this. Now, Sprint at one point said it was leaving open whether we would treat. Administrative and judicial state proceeding is unitary, but it has this footnote six that says, you know, a bunch of state courts have gone off on this coercive versus remedial distinction that we mentioned in Ohio civil rights, but we don't think that's necessary. We don't think that's inevitably helpful, kind of undermines this. But O'Neill really put some weight on the idea this is a coercive proceeding since the Supreme Court took a swipe at that pretty important part of O'Neill's logic. Couldn't we say that it's abrogated? It's not consistent. Now, Sprint is telling us limit yourself to these three categories and don't pretend that whenever something is coercive, that means we have to abstain. No, Your Honor, because I think Sprint really addresses, well, that's it becomes the first part of the analysis, whether it fits into one of these three. And then O'Neill was decided, of course, pre-Sprint and really just applied the middle sex factors. But I think O'Neill is still applicable because it really does deal with that second part of the analysis, which is the middle sex factors. And I think that the coercive administrative proceeding part does not necessarily undermine the, you know, the Sprint factors. Thank you. Thank you, Your Honors. Mr. Haverty, you're waiving your rebuttal. We thank counsel for their arguments. We will take the matter under advisement.